UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------------------- x
JAMES A. HARNAGE, MARCELINO B. LASALLE,      :
JAMES DAVENPORT,                             :
                                             :
                    Plaintiffs,              :
                                             :
        v.                                   :
                                             :   3:24-cv-1858 (SFR)
JESUS GUADARRAMA, DANIEL DAUGHERTY,          :
DEPUTY WARDEN MANGIAFICO, DISTRICT           :
ADMINISTRATOR RODRIGUEZ, REV. DR.            :
SANTIAGO, ASSOCIATE CHAPLAIN USMAN,          :
COMMISSARY OPERATOR DICKEY, COMMISSARY       :
SUPERVISOR DOE 1, and COMMISSARY             :
PURCHASING DIRECTOR DOE 2                    :
                                             :
                    Defendants.              :
-------------------------------------------------------------- x
```

**INITIAL REVIEW ORDER**

Plaintiffs James Harnage, Marcelino LaSalle, and James Davenport are individuals in the custody of the Connecticut Department of Correction ("DOC") and incarcerated at the MacDougall Correctional Institution ("MacDougall"). Compl. ¶¶ 1-3, ECF No. 1. They have filed this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 asserting equal protection and religious rights violations under the United States Constitution, federal statutory law, and the Connecticut Constitution.[1] They sue the following four Connecticut DOC employees who work at MacDougall: Wardens Jesus Guadarrama and Daniel Daugherty, Deputy Warden Mangiafico, and

---

[1] Harnage acknowledges that he is subject to the "Three Strikes Rule" under 28 U.S.C. § 1915(g). Compl. ¶ 57. Thus, Harnage may not bring this action *in forma pauperis* absent allegations of "imminent danger of serious physical injury." *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). I permit Harnage to proceed *in forma pauperis* as his allegations indicate he experiences severe pain and facial skin irritation by having to use the Magic Shave product for hair removal consistent with his religious beliefs. Compl. ¶¶ 23, 38-40, 57.

Commissary Operator Dickey. They also sue five other DOC prison officials: District Administrator Rodriguez, Director of Religious Services Reverend Dr. Santiago, Associate Chaplain Usman, Commissary Supervisor Doe 1, and Commissary Purchasing Supervisor Doe 2. Compl. ¶¶ 4-12. Plaintiffs seek damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, I must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). I have thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I.      **FACTUAL BACKGROUND**

Although I do not set forth all of the facts alleged in Plaintiffs' complaint, I summarize their basic factual allegations here to give context to my rulings below.

Plaintiffs are men who practice, and are registered as adherents to, the Jewish faith. Compl. ¶¶ 14-15. They are housed at MacDougall, a male correctional facility. *Id.* ¶ 14.

All nine Defendants are allegedly involved in making products available to the inmate population. *Id.* ¶ 16.

Plaintiffs have all purchased items at the commissary. *Id.* ¶ 17. As men in the custody of the DOC, they are subject to restrictions on their commissary purchases of scented soap, shampoos, vent or styling hair brushes, shower caps, foam rollers, hair dryers, body wash, and hair removal products. *Id.* ¶¶ 18-19, 26. Plaintiffs allege that the restrictions are unreasonable and based solely on consideration of their gender as men. *Id.* ¶ 18.

Women in the custody of DOC are not subject to the same commissary restrictions. *Id.* ¶ 20.

Plaintiffs complain that they are restricted from purchasing Nair Hair Remover Cream ("Nair"). *Id.* ¶ 21. Pursuant to the commissary list, male inmates are limited to purchasing Magic Shave, which is a hair removal product that is harsher on the skin than Nair. *Id.* ¶ 22. Many incarcerated individuals with lighter skin tones have reported severe skin irritation resulting from their use of Magic Shave. *Id.* ¶ 23. Nonetheless, Defendants refuse without any legitimate or reasonable penological reason to permit Plaintiffs to purchase the same hair removal product that is available to female inmates. *Id.* ¶ 24.

## II.     LEGAL STANDARD

Under 28 U.S.C. § 1915A, courts must review civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [a plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly

give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Harden v. Doe*, No. 19-CV-3839 (CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

## II. <u>DISCUSSION</u>

Plaintiffs' complaint asserts that the commissary restrictions violate Plaintiffs' rights under the Fourteenth Amendment's Equal Protection Clause, the First Amendment's Free

Exercise Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1.[2]

As an initial matter, I note that Plaintiffs allege that they are members of a "class of inmates" and appear to assert asserts claims on behalf of class members. Comp. ¶¶ 17, 29, 31, 33-35. As *pro se* litigants, Plaintiffs may not bring a class action lawsuit because non-attorneys may not represent anyone other than themselves. *See American Psychiatric Ass' v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) (litigant generally has no standing to claim violation of rights of third parties); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (*pro se* litigant has no right to represent third parties).

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal

---

[2] Plaintiffs cannot proceed against state officials under the Religious Reformation Act ("RFRA"), 42 U.S.C. § 2000bb-1(a), because RFRA has been invalidated as applied to the states. *See City of Boerne v. Flores*, 521 U.S. 507, 530-536 (1997).

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (stating that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983 and "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had").

Plaintiffs do not allege facts to describe each Defendant's specific conduct relevant to their role in advancing or enforcing the restrictions on male commissary products. But for purposes of initial review, Plaintiffs' assertions that each Defendant is involved with providing commissary products is sufficient to satisfy the personal involvement requirement for their individual capacity claims.[3]

Accordingly, I consider whether Plaintiffs have alleged any plausible claims.

## A.  Fourteenth Amendment Equal Protection Violation

To state an equal protection claim, Plaintiffs must allege facts showing that: (1) they have been treated differently from similarly situated individuals and (2) the discriminatory or different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980). "The Equal Protection Clause . . . commands that no State shall 'deny to any person within its jurisdiction the equal protection of

---

[3] I may later determine that a particular defendant cannot be held liable absent the requisite involvement in the alleged constitutional violation.

6

law,' which is essentially a direction that all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). When the government classifies on the basis of sex or gender, the classification is subject to heightened, intermediate scrutiny that requires the government to show that the classification is substantially related to an important governmental objective. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988); *Dale v. Barr*, 967 F.3d 133, 139 (2d Cir. 2020). Here, Plaintiffs say that a DOC policy intentionally discriminates against Plaintiffs on the basis of gender without any legitimate governmental objective. *See Dupigny v. Hannah*, No. 3:20-CV-00836 (JAM), 2021 WL 151043, at *3 (D. Conn. Jan. 18, 2021) (on initial review, determining plausible equal protection violation arising from DOC policy restriction barring incarcerated plaintiff from having a hair dryer). Accordingly, Plaintiffs may proceed on their claims of Equal Protection Clause violation for gender discrimination against Defendants in their individual capacities for further development of the record.

### B.    First Amendment Free Exercise

Plaintiffs allege denial of their First Amendment right to freely exercise their religion. People who are incarcerated "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). But in the prison context, alleged violations of the right to free exercise are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349.

Thus, for an incarcerated person's claim of First Amendment free exercise deprivation, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison

7

officials furthers . . . legitimate penological objective[s]." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (citing *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)). So long as a restriction on an incarcerated person's religious practice "is reasonably related to legitimate penological interests," that restriction does not violate the First Amendment. *Turner*, 482 U.S. at 89 (1987). Courts must take care to avoid "substitut[ing] [their] judgment on difficult and sensitive matters of institutional administration." *O'Lone*, 482 at 353 (internal quotation marks and alteration omitted).

The Second Circuit has confirmed that a defendant's "isolated acts of negligence" do not violate an individual's free exercise of religion. *Wiggins v. Griffin*, 86 F.4th 987, 997 (2d Cir. 2023). An incarcerated plaintiff must adduce evidence sufficient to raise an inference that a defendant acted with at least deliberate indifference in depriving the plaintiff of the ability to engage in a religious practice. *Id.*; *see also Kravitz*, 87 F.4th at 129 (citing *Wiggins,* 86 F.4th at 997-98).

Plaintiffs allege that as adherents to the Jewish faith, they are restricted from placing a razor to their face and neckline, and the Magic Shave available to male inmates is not a viable option for the removal of facial hair as they are fair skinned individuals. Compl. ¶¶ 38-39. They say that they cannot now remove their facial hair without the severe burning and irritation caused by Magic Shave, which has been reported by the majority of the inmate population with fair skin. *Id.* ¶¶ 23, 40-41.

Affording the complaint a liberal construction, I conclude that the complaint adequately alleges for initial pleading purposes that the DOC policy barring Plaintiffs from safely removing their facial hair infringes upon their rights to free exercise of religion in violation of the First Amendment. *See Dupigny*, No. 3:20-CV-00836 (JAM), 2021 WL 151043, at *4 (permitting

incarcerated plaintiff's First Amendment free exercise claim to proceed beyond initial review based on allegation that his religious beliefs did not allow for his hair to be cut and he could not maintain his dreadlocks due to DOC's policy barring him from having a hair dryer); *see also Holt v. Hobbs*, 574 U.S. 352 (2015) (upholding religion-based challenge under RLUIPA to prison grooming policy barring prisoners from growing beards). Accordingly, Plaintiffs may proceed on their First Amendment free exercise claims against Defendants in their individual capacities for further development of the record.

### C.    Section 1983 Official Capacity Claims

Plaintiffs seeks injunctive relief for violation of their Fourteenth and First Amendment rights. A plaintiff may seek official capacity relief against a state official only to the extent that he alleges an ongoing violation of his constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022).

As the complaint suggests Plaintiffs remain subject to DOC's commissary restrictions, I will permit them to proceed for injunctive relief against Defendants in their official capacities to remedy any ongoing Fourteenth Amendment equal protection and First Amendment free exercise deprivations.

To the extent Plaintiffs assert official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

### D.    RLUIPA

RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (quoting 42 U.S.C. § 2000cc-1(a)); *see also Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (noting that RLUIPA allows for injunctive relief but not for money damages claims against state officers in their individual or official capacities).

For purposes of initial review, Plaintiffs' complaint is sufficient to suggest that their sincere religious beliefs have been "substantially burden[ed]" by the DOC commissary policy limiting their access to only the facial hair removal product, Magic Shave. *Antrobus v. New York City*, No. 23-CV-7038 (LTS), 2023 WL 6609443, at *2 (S.D.N.Y. Oct. 10, 2023) (stating that under RLUIPA, government may not "substantial[ly] burden" an institutionalized person's religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means). Accordingly, Plaintiffs may proceed on their RLUIPA claims for injunctive relief against Defendants in their official capacities.

### E.    Connecticut Constitutional Claims

Plaintiffs assert violation of their rights under Article First, §§ 1 and 20. Although the Complaint does not state explicitly that Plaintiffs seek money damages to remedy these asserted violations of the Connecticut Constitution, I presume that Plaintiffs invoke RLUIPA, the Fourteenth Amendment, and the First Amendment for injunctive relief and § 1983 and the Connecticut Constitution for money damages. To the extent Plaintiffs seek monetary damages for asserted violations of Article First, §§ 1 and 20 of the Connecticut Constitution, I decline at this

juncture to exercise supplemental jurisdiction over these claims because they raise novel questions of state law. *See* 28 U.S.C. § 1367(c)(1) ("district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the claim raises a novel or complex issue of State law").

In *Binnette v. Sabo*, the Connecticut Supreme Court recognized a private cause of action for monetary damages against municipal police officers for violations of Article First, §§ 7 and 9 of the Connecticut Constitution arising from unreasonable search and seizure and unlawful arrest. 244 Conn. 23, 41-47 (1998). In reaching its decision, the Connecticut Supreme Court relied on *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47.

Here, Plaintiffs' claims present new contexts for a cause of action under the Connecticut Constitution. As recognizing such a cause of action presents a novel and complex issue of state law, I decline to exercise supplemental jurisdiction over the state constitutional claims and dismiss them without prejudice to their right to pursue them in state court. *See Baltas v. Erfe*, No. 3:19-cv-1820 (MPS), 2021 WL 3887591, at *8 (D. Conn. Aug. 31, 2021) (concluding inmate's claims under Article First, §§ 7, 8, 20 presented new and undeveloped issues under state law that were not appropriate for federal jurisdiction); *Richard v. Strom*, No. 3:18-CV-1451 (CSH), 2018 WL 6050898, at *8 (D. Conn. Nov. 19, 2018) ("There is no established private right of action under the religious discrimination, due process, or equal protection provisions (Article First §§ 3, 8, and 20) of the Connecticut Constitution."); *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) ("The court finds that there is no private cause of action for monetary damages under the equal protection and due process provisions (Art. First, § § 1, 8 and 20) of the Connecticut Constitution.); *Gothberg v. Town of Plainville*, 148 F. Supp. 3d 168, 187–88 (D.

Conn. 2015) (declining to exercise supplemental jurisdiction over state constitutional claim under Article First, § 8); *see also Lopez v. Smiley*, 375 F. Supp. 2d 19, 26 (D. Conn. 2005) (refraining from exercising supplemental jurisdiction over novel and undeveloped state constitutional claims under Article I).

### III.   CONCLUSION

I therefore enter the following orders:

(1) Plaintiffs may PROCEED with their Fourteenth Amendment equal protection violation claims against Warden Jesus Guadarrama, Warden Daniel Daugherty, Deputy Warden Mangiafico, Commissary Operator Dickey, District Administrator Rodriguez, Director of Religious Services Dr. Santiago, Associate Chaplain Usman, Commissary Supervisor Doe 1, and Commissary Purchasing Supervisor Doe 2 in their individual and official capacities.

I decline to exercise supplemental jurisdiction over Plaintiffs' claims of Connecticut constitutional violation and dismiss such claims without prejudice. *See* 28 U.S.C. § 1367(c)(1).

Plaintiffs may PROCEED with their First Amendment Free Exercise Clause claims against Warden Jesus Guadarrama, Warden Daniel Daugherty, Deputy Warden Mangiafico, Commissary Operator Dickey, District Administrator Rodriguez, Director of Religious Services Dr. Santiago, Associate Chaplain Usman, Commissary Supervisor Doe 1, and Commissary Purchasing Supervisor Doe 2 in their individual capacities and official capacities.

Plaintiffs may PROCEED with their RLUIPA claims against Warden Guadarrama, Warden Daugherty, Deputy Warden Mangiafico, Commissary Operator Dickey, District Administrator Rodriguez, Director of Religious Services Dr. Santiago, Associate Chaplain Usman, Commissary Supervisor Doe 1, and Commissary Purchasing Supervisor Doe 2 in their official capacities.

(2) The clerk shall verify the current work addresses for Warden Jesus Guadarrama, Warden Daniel Daugherty, Deputy Warden Mangiafico, Commissary Operator Dickey, District Administrator Rodriguez, Director of Religious Services Dr. Santiago, and Associate Chaplain Usman with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses within **twenty-one (21) days** of this Order, **May 28, 2025**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any defendant fails to timely return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk is instructed to prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint and this Order on Warden Jesus Guadarrama, Warden Daniel Daugherty, Deputy Warden Mangiafico, Commissary Operator Dickey, District Administrator Rodriguez, Director of Religious Services Dr. Santiago, and Associate Chaplain Usman in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, on or before **twenty-one (21) days** from the date of this order**, May 28, 2025,** and to file a return of service on or before thirty (30) days from the date of this order, **June 6, 2025**.

(4) The Clerk cannot effect service on Commissary Supervisor Doe 1 or Commissary Purchasing Director Doe 2 because Plaintiffs have not provided the first or last names for these Defendants. Plaintiffs will have ninety (90) days from the date of appearance of counsel of the first Defendant to appear in this action to file a notice identifying Doe 1 and Doe 2 by their first and

last names. Plaintiffs may determine this information by reviewing their materials and by sending a discovery request to counsel for any other Defendant, once such Defendant appears in this action.

(5) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) If any plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(7) Plaintiffs shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiffs are advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

Once service has been effected on all Defendants, I will issue a scheduling order setting deadlines for discovery and the filing of dispositive motions.

Bridgeport, Connecticut
May 7, 2025

/s/Sarah F. Russell
SARAH F. RUSSELL
United States District Judge