UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------   x
JAMES A. HARNAGE, MARCELINO B. LASALLE,:
and JAMES DAVENPORT-HERNANDEZ,            :
                                          :
                      Plaintiffs,         :
                                          :
            v.                            :        3:24-CV-1858 (SFR)
                                          :
JESUS GUADARRAMA, et al,                  :
                                          :
                      Defendants.         :
------------------------------------------------------------   x
```

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Plaintiffs James Harnage, Marcelino LaSalle, and James Davenport-Hernandez are serving sentences of incarceration in the custody of the Connecticut Department of Correction ("DOC"). Plaintiffs are observant Jews; they challenge a DOC policy that prohibits male prisoners from purchasing a certain hair removal product. This Opinion resolves Defendants' Motion to Dismiss, ECF No. 51. For the reasons stated below, the Motion to Dismiss is denied.

I.      **BACKGROUND**

A.      **Factual Background**

The following facts from the Complaint are accepted as true for purposes of this Opinion.

Plaintiffs are men who practice, and are registered as adherents to, the Jewish faith. Compl. ¶¶ 14-15, ECF No. 1. Consistent with their faith, Plaintiffs "are supposed to be restricted from placing a razor to their face and neckline." *Id.* ¶ 38.

At the time they filed the Complaint, Plaintiffs were all housed at MacDougall, a male correctional facility. *Id.* ¶¶ 1-3. All nine Defendants are allegedly involved in making products

1

available to the inmate population. *Id.* ¶ 16. Plaintiffs have all purchased items at the commissary. *Id.* ¶ 17. As men in the custody of the DOC, they are subject to restrictions on their commissary purchases of scented soap, shampoos, vent or styling hairbrushes, shower caps, foam rollers, hair dryers, body wash, and hair removal products. *Id.* ¶¶ 18-19, 26. Plaintiffs allege that the restrictions are unreasonable and based solely on consideration of their gender. *Id.* ¶ 18.

Women in the custody of DOC are not subject to the same commissary restrictions. *Id.* ¶ 20. Plaintiffs complain that they are restricted from purchasing Nair Hair Remover Cream ("Nair"). *Id.* ¶ 21. Pursuant to the commissary list, male inmates are limited to purchasing Magic Shave, which is a hair removal product that is harsher on the skin than Nair. *Id.* ¶ 22. Many incarcerated individuals with lighter skin tones have reported severe skin irritation resulting from their use of Magic Shave. *Id.* ¶ 23. According to the Complaint, Magic Shave "causes severe burning and irritation that persists for days, and even weeks." *Id.* ¶ 40. The Complaint contends that Defendants' policy of denying hair remover cream "effectively forces [Plaintiffs] to give up their religious freedoms or endure the needless pain and suffering of the Magic Shave's [e]ffects on their skin." *Id.* ¶ 41. Nonetheless, Defendants refuse without any legitimate or reasonable penological reason to permit Plaintiffs to purchase the same hair removal product that is available to female inmates. *Id.* ¶ 24.

## B.    Procedural History

Plaintiffs initiated the present action by filing a Complaint on November 4, 2024. Compl., ECF No. 1. On November 26, 2024, the Court afforded each Plaintiff leave to proceed *in forma pauperis*. ECF Nos. 13-15.

On May 7, 2025, I issued an Initial Review Order under 28 U.S.C. § 1915A. Initial Review Order ("IRO"), ECF No. 17. I determined that Plaintiffs alleged sufficient facts to proceed on their section 1983 claims of Fourteenth Amendment Equal Protection Clause violation for gender discrimination and First Amendment Free Exercise Clause violation against all Defendants in their official and individual capacities. I also permitted Plaintiffs to proceed on their claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, against all Defendants in their official capacities only. *Id.* I declined to exercise supplemental jurisdiction over Plaintiffs' Connecticut constitutional claims. *Id.*

On November 10, 2025, Defendants filed a motion to dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 51; Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), ECF No. 51-1. Plaintiffs filed an objection to the motion to dismiss on December 16, 2025. Pls.' Mem. of L. in Opp. to Mot. to Dismiss ("Pls.' Mem."), ECF No. 60.[1]

Moreover, on May 20, 2026, I granted Plaintiffs' Motion to Appoint Counsel. ECF No. 149.

## II.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although

---

[1] The parties have continued to engage in discovery during the pendency of the Motion to Dismiss. Although I do not recount these details here, I note that there has been significant discovery-related motions practice.

3

this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III. **DISCUSSION**

As noted, Plaintiffs are proceeding in this case for violations of their rights under the Fourteenth Amendment Equal Protection Clause and the First Amendment Free Exercise Clause against Defendants in their individual and official capacities, and under RLUIPA against Defendants in their official capacities. *See* IRO, ECF No. 17.

Defendants seek dismissal of the Complaint in its entirety and primarily argue that all Defendants are entitled to qualified immunity. *See* Defs.' Mem. 9-10. Within their discussion of qualified immunity, Defendants posit: "The personal involvement requirements inform whether plaintiffs even stated a claim against the supervisory defendants." *Id.* at 9.

Defendants' Motion fails to address Plaintiffs' claims for official capacity relief under 42 U.S.C. § 1983 and RLUIPA. Thus, I address only whether Plaintiffs' individual capacity claims under 42 U.S.C. § 1983 survive the motion to dismiss.[2]

---

[2] Claims for official capacity relief do not require a showing of a defendant's personal involvement. *See Smith v. Muccino,* 223 F. Supp. 2d 396, 403 (D. Conn. 2002) ("[P]ersonal involvement is not a prerequisite to injunctive relief, and such relief may be had against officers in their official capacity."). Nor does qualified immunity apply as a defense for a claim against a defendant in his or her official capacity. *See Rossy v. City of Buffalo*, No. 23-CV-7296, 2025 WL 816301, *5 (2d

A.    **Personal Involvement**

I briefly review the standards for Plaintiffs' constitutional claims. Plaintiffs seek monetary damages from Defendants and must, therefore, plead facts sufficient to suggest that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 67). The personal involvement of a supervisor may be established by direct participation in a constitutional violation or by showing that the official-defendant "created a policy or custom under which the violation occurred." *Saratoga Black Lives Matter, Inc. v. City of Saratoga Springs*, No. 1:24-CV-00865 (AMN/PJE), 2026 WL 710089, at *6 (N.D.N.Y. Mar. 13, 2026) (citation omitted); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) ("Post-*Tangreti*, district courts in the Circuit have determined that personal involvement still may be established for a supervisory defendant if he or she 'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom.'").

1.    **Fourteenth Amendment Equal Protection Violation**

"The Equal Protection Clause . . . commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439(1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim predicated on improper discrimination, Plaintiffs must allege facts showing

---

Cir. Mar. 14, 2025) ("In short, 'with respect to an official-capacity claim, qualified immunity is simply not a defense.'") (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012)).

that: (1) they have been treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)); *accord Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019).[3] When the government discriminates on the basis of sex or gender, "[t]he disparity in treatment must survive the appropriate level of judicial scrutiny which, in the context of a prison, is that the difference in treatment was not reasonably related to any legitimate penological interests." *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (internal quotation marks omitted).

Plaintiffs allege that Defendants "each play a role in making products available, including . . . personal care items . . . to the inmate population within the department," but "have placed unreasonable limitations on the availability of commissary items to the plaintiffs . . . based solely on a consideration of their gender as male inmates." Compl. ¶¶ 16, 18. Plaintiffs allege further that the "female commissary list" grants female inmates access to a variety of personal hygiene products that are not available to male inmates. *See id.* ¶¶ 18-22. Plaintiffs complain that female prisoners may purchase the hair removal cream Nair, but male prisoners have only the option to purchase a harsher hair removal product, Magic Shave, which causes severe skin irritation for lighter-skinned people. *Id.* ¶¶ 19-23. Plaintiffs explain that

---

[3] Although not implicated here, a plaintiff may also assert a class of one claim under the Equal Protection Clause by pleading "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

"defendants fail and refuse to allow the plaintiffs to purchase the same hair remover made available to the female inmate population, without any justifiable or reasonable penological purpose" and have failed to make "any reasonable attempts to provide alternatives for this disparity in treatment." *Id.* ¶¶ 25.

In considering Defendants' Motion to Dismiss, I must construe the Complaint liberally, as drafted by self-represented litigants, and I am bound to credit Plaintiffs' allegations as true. At the pleading stage, a complaint may "contain general allegations as to a defendant's knowledge . . . because a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021). Plaintiffs are, however, "required to include allegations of the facts or events they claim give rise to an inference of knowledge." *Id.*

Upon review, I decline to depart from the holding in the IRO that the Complaint states a claim under the Equal Protection Clause. In particular, I conclude that Plaintiffs sufficiently allege that all Defendants acted intentionally to impose disparate commissary restrictions on male and female prisoners without legitimate penological interest. *See Dupigny v. Hannah*, No. 3:20-CV-00836 (JAM), 2021 WL 151043, at *3 (D. Conn. Jan. 18, 2021) (holding that incarcerated plaintiff stated a plausible equal protection claim based on DOC policy restriction barring him from having a hair dryer).

### 2. First Amendment Free Exercise Violation

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted). And, in the prison context, alleged violations of the right to free exercise are "judged under a 'reasonableness' test less restrictive than that

ordinarily applied to alleged infringements of fundamental constitutional rights." *Id.* at 349. Thus, in analyzing Plaintiffs' claim under the Free Exercise Clause of the First Amendment,, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers . . . legitimate penological objective[s]." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023) (citing *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)). So long as a restriction on an incarcerated person's religious practice "is reasonably related to legitimate penological interests," that restriction does not violate the First Amendment. *Turner v. Safely*, 482 U.S. 78, 89 (1987). The Second Circuit has confirmed that a defendant's "isolated acts of negligence" do not violate an incarcerated person's free exercise of religion, and that an incarcerated plaintiff must adduce evidence sufficient to raise an inference that a defendant acted with at least deliberate indifference in depriving the plaintiff of the ability to engage in a religious practice. *Wiggins v. Griffin*, 86 F.4th 987, 997 (2d Cir. 2023); *see also Kravitz*, 87 F.4th at 129 ("In the context of the Free Exercise Clause, we have explained that liability depends on an officer-defendant acting with at least deliberate indifference in depriving an inmate of the ability to engage in a religious practice.").

In addition to their other allegations about Defendants' imposition of disparate commissary limitations, Plaintiffs allege the commissary restriction on male inmate hair removal products "effectively forces them to give up their religious freedoms or endure the needless pain and suffering of the Magic Shave's [e]ffects on their skin, to remove facial and body hair." Compl. ¶¶ 41-42. Plaintiffs state Defendants "knew or should have known that

8

their acts and omissions herein alleged would violate the plaintiffs' rights, causing harm and injury to plaintiffs." *Id.* ¶ 45.

These allegations plausibly support the inference that each Defendant acted intentionally or with indifference to burden Plaintiffs' exercise of their religious practice to remove their facial hair without a razor. *See Dupigny*, 2021 WL 151043, at *4.

Accordingly, I deny the Motion to Dismiss on the grounds that Plaintiffs' Complaint fails to allege plausible claims of Fourteenth and First Amendment violations against Defendants in their individual capacities.

### B.      Qualified Immunity

Qualified immunity may be successfully asserted on a motion to dismiss the complaint, but the defense "faces a formidable hurdle" at the pleading stage. *Horn v. Stephenson*, 11 F.4th 163, 169-70 (2d Cir. 2021) (citation and internal quotation marks omitted).

Because qualified immunity is an affirmative defense that a defendant has the burden of pleading in the answer, the complaint "need not plead facts showing the absence of such a defense." *Castro v. United States*, 34 F.3d 106, 111 (2d Cir. 1994). Moreover, on a motion to dismiss premised on qualified immunity, a "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). For these reasons, "advancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020), *abrogated on other grounds by Case v. Montana*, 146 S. Ct. 500 (2026).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). "'Even if the right was clearly established,' a court can still find a suit blocked by qualified immunity where 'it was objectively reasonable for the officer to believe the conduct at issue was lawful.'" *Steele-Warrick v. Microgenics Corp.*, 671 F. Supp. 3d 229, 246 (E.D.N.Y. 2023) (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)).

Defendants argue that clearly established law did not "put the defendants on notice" that their conduct could violate the Constitution. Defs.' Mem. 9. I disagree. Here, as discussed above, Plaintiffs invoke two clearly established rights under the United States Constitution: (1) their rights under the Fourteenth Amendment Equal Protection Clause to be free of disparate treatment based on their gender absent a legitimate penological interest; and (2) their rights under the First Amendment Free Exercise Clause to engage in their religious practice without governmental burden that does not serve a legitimate penological objective. *See, e.g.*, *Wiggins v. Griffin*, 86 F.4th 987, 995 (2d Cir. 2023) (holding that it is clearly established that "incarcerated individuals have the right to engage in religious exercise absent a legitimate penological justification for the denial"); *Reynolds v. Quiros*, 990 F.3d 286, 300 (2d Cir. 2021) (describing equal protection rights of incarcerated people). Defendants make no effort to distinguish these authorities, nor does their briefing offer any analysis of the relevant constitutional provisions. *See Gonzalez v. Morris*, No. 914CV1438GLSDEP, 2018 WL 1353101, at *7 (N.D.N.Y. Mar. 15, 2018), *aff'd*, 824 F. App'x 72 (2d Cir. 2020).

The Complaint alleges that Plaintiffs seek to comply with their Jewish faith by removing facial hair without a razor, and that this religious practice is burdened by Defendants' practice of restricting male prisoners from purchasing a product otherwise available to women prisoners. At this stage, I can identify no legitimate penological justification for limiting Plaintiffs' commissary access to one hair removal product that can cause severe skin irritation. *See Baltas v. Chapdelaine*, 153 F.4th 328, 341 (2d Cir. 2025) (ruling that qualified immunity did not apply where prison official defendants "advanced no penological justification" for denying plaintiff access to Native American religious sweat lodge services or congregate smudging). I therefore cannot resolve from this record whether Defendants are entitled to qualified immunity. The Motion to Dismiss is accordingly denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED. Defendants shall file an Answer on or before July 10, 2026. In light of the recent appointment of counsel for Plaintiffs, the parties are hereby referred to United States Magistrate Judge Garcia to conduct a scheduling conference to set new deadlines for discovery and the filing of dispositive motions.

**SO ORDERED.**

New Haven, Connecticut
June 15, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

11